UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 19 C 641 |
| v. | Judge Thomas M. Durkin |
| DONALD LEE, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Defendant Donald Lee is charged with various crimes in aid of racketeering. He moves to dismiss Counts II and III of the superseding indictment, as well as portions of the government's Notice of Special Findings, as unconstitutional as applied to him.[1] R. 476, 489, 482. The motions are granted in part and denied in part.

**Background**

The defendants in this case were charged with conspiring to engage in a variety of racketeering acts through an enterprise known as the Wicked Town faction of the Traveling Vice Lords street gang, in violation of 18 U.S.C. § 1962(d). They are charged with a number of substantive offenses. Relevant to the instant motions, Lee is charged with murdering Lemont Ware in July 2000 and Ernest Moore in December 2002, in violation of 18 U.S.C. § 1959(a)(1). Lee was 17 at the time of Ware's murder and 20 at the time of Moore's murder.

---

[1] Lee made his motion to dismiss Count III, R. 489, in part by adopting the arguments made by co-defendant Darius Murphy. R. 488. For convenience, the Court refers to Murphy's arguments as Lee's.

A trial date has been set for September 19, 2022. Lee has filed various motions to dismiss pursuant to *Miller v. Alabama*, 567 U.S. 460 (2012). Those motions are addressed below.

## Analysis

In *Miller v. Alabama*, the Supreme Court held that sentencing juveniles (individuals under 18 years of age) to mandatory terms of life imprisonment without the possibility of parole violates the Eighth Amendment. 567 U.S. at 460. This is so because the attendant factors of youth make juveniles "less deserving of the most severe punishments," as they are inherently less culpable for their crimes and more capable of reform. *Id.* at 471. *Miller* did not categorically bar the option of life sentences for juvenile offenders, but a court must now consider the individual defendant, as well as his youth and corresponding mitigating characteristics, before imposing a discretionary life sentence. *Montgomery v. Louisiana*, 577 U.S. 190, 209-10 (2016) (citing *Miller*, at 483)).

The operative statute in this case, 18 U.S.C. § 1959, provides that a defendant convicted of murder in aid of racketeering must be sentenced to life imprisonment or death. Because he was 17 years old at the time of Ware's murder, Lee contends the penalty provisions of § 1959 are unconstitutional as applied to him under *Miller*, and therefore Count II must be dismissed. Lee also argues that Count III should also be dismissed because, although he was 20 years old, the same characteristics outlined in *Miller* as attributable to youth should extend beyond 18 years old. Finally, Lee argues any portions of the government's Notice of Special Findings, which provides

2

for potential enhanced penalties should Lee be convicted, must also be dismissed as unconstitutional insofar as they relate to the Ware murder.

## I.      Count III

Count III alleges Lee murdered Ernest Moore in December 2002. Lee was 20 years old at the time. Although he was a legal adult, Lee argues that many of the characteristics of youth identified in *Miller*, such as a juvenile's "immaturity, recklessness, and impetuosity" extend beyond age 17 and up to age 22. *Miller*, at 472. Lee references studies which provide that the brain development process, which is not yet complete at age 17, remains unfinished beyond age 18. R. 488 at 8 (citing Catherine Insel & Stephanie Tabashneck, *White Paper on the Science of Late Adolescence: A Guide for Judges, Attorneys, and Policy Makers*, Ctr. For Law, Brain, & Behavior, 7 (2022)). The research, Lee argues, shows that 18 to 21-year-old individuals, as compared to older adults, have underdeveloped decision-making abilities which lead them to act on impulse when emotions are aroused.

Lee does not point to any cases in which a Court extended *Miller* to a defendant accused of committing a murder when they were 18 or older, and the Court is unaware of any. *See Cruz v. United States*, 826 Fed. Appx. 49, 52 n.2 (2d Cir. 2020) ("Every Circuit to consider this issue has refused to extend *Miller*" to defendants 18 and older). Instead, Lee relies on a recent dissenting opinion. *See* R. 488 at 16-17 (citing *Ruiz v. United States*, 990 F.3d 1025 (7th Cir. 2021)). In *Ruiz*, the Seventh Circuit considered whether a defendant's predicate offenses underlying his 18 U.S.C. § 924(c) convictions were "crimes of violence" warranting a 45-year sentence to run

consecutive to his seven concurrent life sentences (both sentences stemmed from the same case, but only the 45-year term was challenged). *Ruiz*, 990 F.3d at 1027. The Seventh Circuit determined that, even if Ruiz's § 924(c) convictions were vacated, he would still be serving life sentences for valid convictions for his other crimes, and found that any error was thus harmless. Judge Wood dissented, explaining she would have reached the merits on Ruiz's claims because "a conviction for a noncrime is always prejudicial error as a matter of law." *Id.* at 1035. Judge Wood went on to note that future legal reforms may alter Ruiz's life sentences, and that "these possibilities are far from remote." *Id.* at 1039. She then pointed out that Ruiz was 18 at the time of his offenses, detailed *Miller*'s demand for different penal treatment for juveniles and the current age of 18 as the relevant cutoff point. *Id.* Judge Wood continues:

> But science does not stand still, and there is no reason to think that it will do so going forward. The scientific community's views on the development of the brain evolve all the time. One of the medical authorities on which the Supreme Court has relied most heavily on questions of neurological development is the American Association on Intellectual and Developmental Disabilities (AAIDD) … Just this year, the AAIDD released the 12th edition of its treatise … In it, the Association defines the end of the human intellectual development period as "the age of 22"—not 18.

*Id.* (internal citations omitted). Thus, Judge Wood wrote that if the Supreme Court revised the *Miller* rule and raised the Eighth Amendment age-line to 22, Ruiz's life sentences would become eligible for immediate resentencing. Judge Wood argues that the majority was wrong to find no error stemmed from his § 924(c) 45-year sentence, because his underlying life sentences could, one day, be vacated. *Id.* at 1040.

Lee's reliance on the *Ruiz* dissent is not persuasive. First, of course, the Court is not bound by a dissent. But regardless, Judge Wood's position is that if the Supreme Court revises the *Miller* rule to extend beyond age 18, *then* Ruiz would have a valid challenge to his life sentences. Judge Wood does not make the argument that the majority should have applied *Miller* to Ruiz's case, only that the possibility to do so may arise in the future. At present, the Supreme Court has drawn the line at 18, and *Miller* does not provide Lee with relief from Count III. *See In re Rosado*, 7 F.4th 152, 160 (3d Cir. 2021) ("*Miller* set a clear age limit. [The defendant] falls on the wrong side of that limit. And we cannot extend it. A nonfrivolous extension of a precedent cannot go beyond the precedent's bright line. Someday, the Supreme Court may redraw that line. But we cannot."). The motion to dismiss Count III is denied.

## II. Count II

Count II alleges Lee murdered Lemont Ware in July 2000, when Lee was 17 years old. The parties agree that *Miller* applies, and a mandatory sentence of life without the possibility of parole is unconstitutional as a punishment for Count II should Lee be convicted. Lee argues the statute is therefore unconstitutional in its entirety as applied to him, and he cannot be convicted under it. The government argues the statute can be severed.

When part of a statute is deemed unconstitutional, courts must determine whether a partial severance of the statute can eliminate the unconstitutional portion before invalidating the entire statute. *United States v. Booker*, 543 U.S. 220, 246-47 (2005). "[T]he traditional rule is that the unconstitutional provision must be severed

5

unless the statute created in its absence is legislation that Congress would not have enacted." *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2209 (2020). The inquiry is whether "the legislature would have preferred what is left of its statute to no statute at all". *Ayotte v. Planned Parenthood of Northern New England*, 546 U.S. 320, 330 (2006).

> Section 1959 provides:
>
> (a) whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do, shall be punished--
>
>> (1) for murder, by death or life imprisonment, or a fine under this title, or both; and for kidnapping, by imprisonment for any term of years or for life, or a fine under this title, or both[.]

Lee cannot be sentenced to death per *Roper v. Simmons*, 543 U.S. 551 (2005), and cannot receive a mandatory life sentence per *Miller*. He argues if those portions are removed, all that remains is a fine, and a fine as the sole punishment for murder in aid of racketeering is nonsensical and contrary to what the legislature intended, and therefore the statute is not severable.

Lee relies primarily on *United States v. Under Seal*, 819 F.3d 715, 717 (4th Cir. 2016), where the Fourth Circuit ruled that prosecuting a juvenile for murder in aid of racketeering under the same statute would violate *Miller*. R. 476 at 5 (citing *Under Seal*, 819 F.3d at 717). The government argued in *Under Seal* that the sentence in

6

place for kidnapping in aid of racketeering could be substituted for murder, which the Fourth Circuit rejected, refusing to "fill a void in the statutory language by looking to other offenses." *Under Seal*, 819 F.3d at 725.

Numerous courts have declined to follow *Under Seal*, finding that a discretionary life sentence remains an option for a juvenile's sentence under § 1959, as *Miller* only prohibited mandatory life sentences. In *United States v. Conyers*, 227 F. Supp. 3d 280, 289 (S.D.N.Y. 2016), the district court outlined the history of § 1959(a)(1). The original version of the statute was identical to its current form, except it read "for any term of years or life" rather than requiring death or life imprisonment. *Id*. The statute was then amended to include the mandatory minimum Lee now challenges. The *Conyers* Court used this legislative history to support its rejection of *Under Seal's* reasoning, finding that Congress would rather have the statute intact and permit a discretionary life sentence (or anything up to life), rather than no statute at all for murder in aid of racketeering. *Id*. "In other words, Congress has previously considered and enacted the exact same sentencing scheme the court adopts today." *Id*. The fact that Congress previously endorsed a penalty of up to life imprisonment in the statute is "strong evidence that the Court's approach is consistent with the basic purposes of the statute and is preferable to invalidating the statute entirely." *Id*.[2]

---

[2] The Supreme Court engaged in a similar analysis when it partially invalidated and severed the capital penalty provision of the Federal Kidnapping Act. *See United States v. Jackson*, 390 U.S. 570 (1968) ("In this case it happens that history confirms what common sense alone would suggest: the law as originally enacted in 1932 contained no capital punishment provision…it is therefore clear that Congress would

7

Similarly, the Fifth Circuit addressed the issue of severance regarding first degree murder, 18 U.S.C. § 1111(b), in *United States v. Bonilla-Romero*, 984 F.3d 414 (5th Cir. 2020). The statute in *Bonilla-Romero* called for the same penalty as § 1959, providing that a defendant "shall be punished by death or by imprisonment for life." *Bonilla-Romero*, 984 F.3d at 417. The defendant argued, under *Miller*, that the statute no longer contained a constitutional penalty for juveniles. *Id*. The Fifth Circuit held that the statute "sets forth both a maximum and a minimum sentence" and severance of the unconstitutional sentences was appropriate. *Id*. It explained once death was no longer an available sentence per *Roper*, the statute provided life as both the statutory maximum and minimum sentence. *Id.* at 419. *Miller* then held that life cannot be the minimum sentence, so it remains only the statutory maximum. *Id*. "Thus, excising the mandatory minimum nature of the life sentence is all that is needed to satisfy the constitutional issue for juveniles under [the statute]." *Id*.

The Court agrees with the *Bonilla-Romero* and *Conyers* courts and declines to follow *Under Seal*. *Miller* invalidated the mandatory minimum life sentence present in the statute, but it did not invalidate a statutory maximum of life. "It would seriously lose sight of the forest for the trees to argue that Congress would prefer the Court to invalidate [§] 1959 entirely as applied to juveniles who commit such murders than to allow the sentencing court discretion to sentence such defendants to a term less than life." *Conyers*, at 290. The motion to dismiss Count II is denied, and, if Lee

---

have made interstate kidnapping a federal crime even if the death penalty provision had been ruled out from the beginning.").

is convicted, the Court will interpret § 1959 as providing a statutory maximum sentence of life imprisonment, to be given only after considering the factors attributable to Lee's youth at the time, along with all of the factors set forth in 18 U.S.C. § 3553(a).

### III. Notice of Special Findings

In Count I (RICO conspiracy), the government included a "Notice of Special Findings," putting Lee on notice that the government intends to introduce evidence of predicate offenses for which the maximum penalty includes life imprisonment. R. 284 at 13-15. The government is required to provide this Notice because, ordinarily, RICO conspiracy carries a maximum penalty of 20 years' imprisonment. 18 U.S.C. § 1963(a). However, where "the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment," the maximum penalty is increased to life imprisonment. *Id*. Thus, if the jury "returns a special verdict finding liability for a life-eligible predicate offense, then, pursuant to § 1963(a), [Lee] may be sentenced to life imprisonment on the RICO conspiracy charge in Count One." R. 508 at 2.

The Notice indicates that the murders of Lemont Ware (in 2000), Ernest Moore (in 2002), John Johnson (in 2003), Charlie Weathers (in 2015), Malcom Willie (in 2015), James Douthard (in 2015), and Kishaun Mobley (in 2017) constitute first degree murders. Lee is alleged to have committed or participated in the commission of those murders. As discussed, he was 17 years old at the time of the Ware murder, and was 18 or older during the rest. The Notice then outlines what the government

9

posits are applicable enhanced penalties under Illinois law which provide for a maximum of life imprisonment. Relevant to Lee, the Notice provides:

> **Notice ¶ 11**: Pursuant to 720 ILCS 5/9-1(b)(11) and 730 ILCS 5/5-8-1(a)(1)(b), each of the murders referenced above carry a maximum sentence of natural life imprisonment. 720 ILCS 5/9-1(b)(11) provides: "A defendant who at the time of the commission of the offense has attained the age of 18 or more and who has been found guilty of first degree murder may be sentenced to death if … the murder was committed in a cold, calculated and premeditated manner pursuant to a preconceived plan, scheme, or design to take a human life by unlawful means, and the conduct of the defendants created a reasonable expectation that the death of a human being would result therefrom." The death penalty has been abolished in Illinois, but 730 ILCS 5/5-8-1(a)(1)(b) authorizes a maximum sentence of natural life imprisonment for this offense.
>
> **Notice ¶ 13**: Pursuant to 730 ILCS 5/5-8-1(a)(1)(d)(iii), the murders of Ware, Moore, and Johnson each carry a maximum sentence of natural life imprisonment. 730 ILCS 5/5-8-1(a)(1)(d)(iii) provides that, "if during the commission of [first degree murder], the person personally discharged a firearm that proximately caused great bodily harm, permanent disability, permanent disfigurement, or death to another person, 25 years or up to a term of natural life shall be added to the term of imprisonment imposed by the court."
>
> **Notice ¶ 16**: Pursuant to 730 ILCS 5/5-8-1(a)(1)(c)(ii), defendant is subject to a mandatory life sentence because, at the time of the commission of a murder, defendant was 18 years old and had murdered more than one victim.

R. 284 at 13-15. Lee argues any portion of the Notice that stems from the Ware murder should be dismissed pursuant to *Miller* because he was a juvenile. The government concedes that Lee cannot be subject to an enhancement under 720 ILCS 5/9-1(b)(11) because the statute applies only to defendants who were 18 at the time of the offense. Accordingly, the government agrees to dismiss the portion of Notice ¶

11 that relates to the Ware murder. R. 508 at 5. The government also agrees to dismiss the portion of Notice ¶ 16 that relates to the Ware murder, because the Ware murder cannot serve as a basis for a mandatory life sentence under 730 ILCS 5/5-8-1(a)(1)(c)(ii) as Lee was not yet 18. *Id.*[3]

Notice ¶ 13 explains that 730 ILCS 5/5-8-1(a)(1)(d)(iii) provides a mandatory consecutive penalty, up to life imprisonment, where a defendant personally discharges a firearm during a first-degree murder. The Ware murder is not an inappropriate basis for this potential enhancement even though Lee was under 18, because the statute does not call for mandatory life imprisonment. As explained throughout this order, *Miller* rendered mandatory sentences of life without parole unconstitutional for juveniles. Should Lee be convicted and should the jury return a special verdict against Lee for Notice ¶ 13, the Court will not be required to impose a life sentence. Rather, the Court will have discretion to impose any sentence it deems fit, and will be required to consider "factors in mitigation in determining the appropriate sentence." *See* 730 ILCS 5/5-4.5-105(a). Further, the Court will have discretion to decline to impose this specific sentencing enhancement in its entirety as it relates to the Ware murder because Lee was a juvenile. 730 ILCS 5/5-4.5-105(c).

The motion to dismiss the Notice of Special Findings relating to the Ware murder is granted as to the portions of ¶¶ 11 and 16 that concern the Ware murder, and is otherwise denied.

---

[3] The government correctly points out that Lee could still face a mandatory life sentence under 730 ILCS 5/5-8-1(a)(1)(c)(ii), as detailed in Notice ¶ 16, because he alleged to have participated in the remaining murders after turning 18 years old.

11

**Conclusion**

For the foregoing reasons, Lee's motion to dismiss Count III, R. 489, is denied. Lee's motion to dismiss Count II, R. 476, is denied. Lee's motion to dismiss the Notice of Special Findings, R. 482, is granted as to the portions of ¶¶ 11 and 16 that relate to the Ware murder, and is otherwise denied.

ENTERED:

_____

Dated: August 2, 2022

Honorable Thomas M. Durkin
United States District Judge